**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **CURTIS LEO WILLIAMS,** | § | |
| **TDCJ No. 1649233,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:13-CV-030-O** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**

By Order of Reference (Docket No. 39), this cause was referred to the undersigned for further review, a hearing, if necessary, and findings of fact, conclusions of law, and recommendation. Petitioner Williams seeks habeas corpus relief in this Court pursuant to 28 U.S.C. §2254 and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings in the United States District Courts.  Petitioner Williams challenges the Director's custody of him pursuant to the judgments and sentences out of the 8th District Court of Hopkins County, Texas.

Factual Background[1]

On January 10, 2007, Curtis Leo Williams was driving a rented vehicle traveling eastward on Interstate Highway 30 in Hopkins County, Texas passing through Brashear, Texas toward

---

[1]     The Administrative Record of the proceedings in the state courts in digital form has been scanned into the record before this court in nine separate docket entries, numbered 20-28.  However, the Administrative Record provided by the state wholly lacks any consistent page numbering system. Accordingly, references herein to the state administrative record will be made by specifying the Federal docket number, followed by the docket page number(s) provided in the heading of each scanned page. The Factual Background section has been gleaned from the Administrative Record, Docket Nos. 20-28; principally from Williams' state court habeas corpus petition, Docket No. 23-1, p.17 of 36 and the Court of Appeals decision on direct appeal at Docket No. 21-2, pp. 1-30.

Sulphur Springs, Texas. Toward the outer limits of Brashear the police officer noticed Williams'

vehicle and commenced to follow it. Where, when and what caused the officer to notice Williams'

vehicle was in controversy, but the officer claimed that he had observed Williams' vehicle to cross

the center line of the highway as it rounded a curve and to speed 68 miles per hour in a 65 mile per

hour zone. The officer stopped Williams' vehicle after it had left the town of Brashear and before

it had entered the city limits of Sulphur Springs, also a town in Hopkins County.  Following the stop,

an on-site investigation ensued involving a drug-sniffing dog and physical search of the vehicle.

Inside the vehicle the police discovered some cocaine and some Marihuana.  Williams was arrested

that day without a warrant. He was released on bail the following day.  Several months later a

complaint was filed charging Williams with possession of a controlled substance.  A little over one

year later, on March 6, 2008,  Williams was indicted for possession of Marihuana and for possession

of cocaine with enhancements from several prior convictions.

Procedural Background

On March 2, 2009, beginning about a year after he was indicted, Williams' trial began with

the empaneling of the jury.  Then, the trial was recessed until the following week.  The trial resumed

on March 9, 2009  but Williams was not present.  Although Williams had absented himself, the court

proceeded with the trial. The following day the jury found Williams guilty of possession of

possession of cocaine and possession of marihuana as charged and assessed his punishment at

sixty-three years and seven years, respectively.  It was over a year later, on May 26, 2010, following

the re-arrest of Williams, when the judge finally entered judgment and sentence upon the jury

verdict. Williams' convictions were affirmed by the Sixth Court of Appeals of Texas on November

3, 2011. *Williams v. State*, No. 06-10-00098-CR, slip op. (Tex. App. Texarkana 2011, pet. ref'd);[2]

---

[2]        Docket No. 21-2, pp. 1-30.

*Williams v. State*, No. 06-10-00099- CR, slip op. (Tex. App. Texarkana 2011, pet. ref'd).[3]  The

Texas Court of Criminal Appeals refused Williams' petition for discretionary review[4] on May 9,

2012. *Williams v. State*, PDR No. 0078-12 (Tex. Crim. App. 2012).[5] Williams filed state habeas

applications challenging each of his convictions[6] and they were each denied on February 6, 2013

without written opinion.[7]  This proceeding followed on March 19, 2013.

<u>Petitioner's Alleged Claims</u>

By his federal petition[8] Williams alleges twenty-eight (28) claims for his release, nineteen

of them relating to ineffectiveness of his trial counsel. Those twenty-eight  claims are summarized

as follows:

1.     The State violated his Fourth Amendment right to be free from unreasonable search and
       seizure following an illegal traffic stop.
2.     The complaint in his case was never properly filed or ruled on by the trial court since it
       lacked date and proper signatures.
3.     The appellate court erred in ruling on his Fourth Amendment search and seizure claim
       without first viewing a police car video of his traffic stop.
4.     The appellate court denied him due process by failing to bring before that court a
       copy of the video of the traffic stop.
5.     The appellate court erred in upholding the trial court's ruling at the suppression hearing.
6.     He received ineffective assistance of counsel for 19 different alleged failures (listed and
       addressed below).

---

[3]        Docket No. 21-2, pp. 93-96.

[4]        Docket No. 21-2, pp. 34-53.

[5]        The only indication in the Administrative Record reflecting the disposition of
Williams' petition for discretionary review by the Texas Court of Criminal Appeals is a copy of
an e-mail from the clerk of the court to counsel for the State reflecting that it was "refused" on
May 9, 2012. Docket No. 22-2, p. 136. But additionally Williams confirms that refusal in his
Petition in this Court. Docket No. 3, p.3, Section 9.

[6]        Docket Nos. 23-1 (controlled substance case) and 26-1(Marihuana case).

[7]        *See* Docket No. 23-1, p. 2 (controlled substance case) and 27-1, p. 2 (Marihuana
case).

[8]        Docket No. 3, pp. 1-24.

7.    The indictment was defective because the State did not give proper notice of its intent to enhance the punishment.
8.    His substitute counsel was denied sufficient preparation time.
9.    The Court of Appeals erred in finding that sufficient evidence supported a finding that the officer had a reasonable suspicion that an offense was committed as to justify the traffic stop.
10.   Sentence was excessive compared to the charged offense thereby causing cruel and unusual punishment.

As to Claim No. 6 relating to Ineffective Assistance of Counsel (IAC), Williams asserts 19 deficiencies of his trial counsel:

6(1).   Failure to investigate the police officer's jurisdiction or the "interlocal" agreement/boundary adjustment between the two adjacent cities.
6(2).   Failure to challenge the statute of limitation applicable to the complaint or indictments.
6(3).   Failure to object to the complaint or indictment's failure to recite the statute in entirety.
6(4).   Failure to object to the complaint or indictments not being filed simultaneously.
6(5).   Failure to investigate the indictment's tolling provisions.
6(6).   Failure to object to improper enhancement paragraphs because they had no spaces between the paragraphs.
6(7).   Failure to object to the State's lack of written notice to seek enhancements.
6(8).   Failure to advise him of the enhancement factors in plea negotiations and agreement or the risk of rejecting if they were available.
6(9).   Failure to investigate the complaint and find that there was no stamp file mark or seal of the district court.
6(10).  Failure to object to the complaint or indictments for not being properly presented because there was no signature by the prosecutor.
6(11).  Failure to investigate the "jurat" on the complaint where there is signature only designating the office, and shows no authority of the person who signed it.
6(12).  Failure to object to the prosecutor not indicting him within the next term of the grand jury;
6(13).  Failure to file a motion to limit prosecution.
6(14).  Failure to consult with him or inquire as to a defense or negotiate any plea offer if there was any made;
6(15).  Failure to swear the motion for continuance to preserve the issue for appeal.
6(16).  Failure to object to prosecutorial misconduct.
6(17).  Failure to investigate the cruel and unusual punishment clause.
6(18).  Failure to investigate the impropriety for any lack of qualification or authorization to participate in any aspect of the case; and,
6(19).  Failure to object to the prosecutor using her strikes during voir dire to exclude blacks from the jury (Batson challenge).

## State's Response to IAC Claims

By its Response[9] and Supplement[10] the State asserts that Williams' IAC claims Nos. 6(1), 6(3), 6(5), 6(7), 6(9), 6(12), 6(16), 6(17), and 6(18) are unexhausted and therefore barred from consideration by this court. As to Williams' IAC Claims Nos. 6(2), 6(4), 6(6), 6(8), 6(10), 6(11), 6(13), 6(14), 6(15), and 6(19), the State asserts that although these claims are exhausted by having been presented previously to the state courts, the state courts' determinations to deny these claims were reasonable and thus binding upon this court. Furthermore, the State asserts that many of these claims are conclusory only, unsupported in the record, and not raising a constitutional issue. Finally, the State asserts that the State court's denial of relief on these claims was reasonable in the light of the "doubly" deferential assumption mandated by the case law.

## State's Response to Non-IAC Claims

The State acknowledges that Williams' Non-IAC claims are not barred by limitations or subject to the successive petition bar. With respect to Williams' Fourth Amendment Claims Nos. 1, 3, 4, and 5,  the State asserts that they are barred from consideration by this court under *Stone v. Powell*,[11] since the State gave Williams an opportunity for a  full and fair litigation of his claims on the search and seizure issues.  The state trial court conducted a suppression hearing on Williams' counsel's motion but denied the motion.  The Court of Appeals denied his direct appeal claim challenging the trial court's ruling on the motion to suppress without viewing the video tape of the traffic stop incident.  And Williams' state habeas corpus petition's challenges regarding the search

---

[9]     Docket No. 30.

[10]    Docket No. 41 (A re-briefing of certain issues in response to this court's order Docket No. 40).

[11]    428 U.S. 465 (1976).

were denied by the Court of Criminal Appeals without written opinion.

Regarding Williams' other Non-IAC claims numbered 2, 7, 8, 9 and 10 the State asserts as to Claim No. 2 that Williams' allegations concerning the format of the complaint afford no relief because Williams was tried on the charges in the indictment, not on the complaint. As to Claim No. 7 the State asserts that this Claim, though raised in Williams' state habeas corpus proceeding, was implicitly adversely determined by the habeas court. The indictment was not so sufficient as to deprive the trial court of jurisdiction and therefore the sufficiency of the indictment is not a matter for federal habeas relief. As to Claims Nos. 8, 9 and 10 the State answers that the claims are conclusory only without support in Williams' pleadings or the record. Furthermore, with respect to his Claim No. 10 based on a cruel and unusual punishment argument, the State asserts that Williams' sentence is not constitutionally grossly disproportionate to the offenses for which he was tried.

## Mix of Exhausted and Unexhausted Claims

Comparing Williams's Original Petition, as supplemented by his Appendix Brief/Memorandum and his Traverse[12] and by his proferred Supplements to his pleadings[13] and the record in the state trial, appeals and habeas court records,  I find that Williams' claims in this Court are a mix of exhausted and unexhausted claims. The principles for examination and resolution of exhausted versus  unexhausted claims are different.  Therefore, analysis and proposed disposition of the multitude of these claims first requires an initial determination of their exhausted/unexhausted status.

## Claim Exhaustion Standards

Federal courts will generally not consider claims in a section 2254 habeas petition that have

---

[12]     Docket Nos. 35 and 36.

[13]     Docket Nos. 42 through 44.

not been first presented to the state courts. 28 U.S.C. § 2254(b).  In other words, the petitioner must exhaust all available state remedies before he may obtain federal habeas relief. *Rodriguez v. McKaskle,* 724 F.2d 463, 466 (5th Cir. 1984); *see also Sterling v. Scott,* 57 F.3d 451, 454 (5th Cir. 1995).  To have exhausted his state remedies, a habeas petitioner must have *fairly presented* the substance of his claims to the state courts.  With respect to claims founded upon the Fourth Amendment restriction on searches and seizures, the United States Supreme Court, in *Stone v Powell,* 428 U.S. 465 (1976) further restricted state prisoners' Fourth Amendment claims in federal habeas corpus proceedings. The court stated that where the state has provided "an opportunity for full and fair litigation" of a Fourth Amendment claim, the Constitution "does not require" that a state prisoner be granted federal habeas corpus relief on the claim that evidence obtained in an unconstitutional search and seizure was introduced at his trial.

The exhaustion requirement is not satisfied if the prisoner presents *new legal theories or factual claims* in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Vela v. Estelle,* 708 F.2d 954, 958 (5th Cir. 1983). ("Normally, the exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court."). This exhaustion rule requires the dismissal of any habeas petition that contains claims not yet raised in available State court proceedings, even if such claims are mixed with exhausted ones. *Rose v. Lundy,* 455 U.S. 509, 513-519 (1982); *Rodriguez,* 724 F.2d at 464.

In order to satisfy the exhaustion requirement, a claim must be presented to the highest court of the state for review. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982)."Moreover, all of the Claims raised in a federal application for writ of habeas corpus must have been 'fairly presented' to the state courts prior to being presented to the federal courts." *Picard v. Conner*, 404 U.S. 270, 275 (1971). In other words,

in order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his assertions. *Id*. at 275-77. "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). While the Texas Court of Criminal Appeals has made clear that a state habeas petition is the preferred vehicle for developing ineffectiveness claims, such claims may be raised on direct appeal without the benefit of a motion for new trial. *Iberia v. Thaler*, 687 F. 3d 222 (5th Cir. 2012) citing *Robinson v. State*, 16 S.W.3d 808 (Tex. Crim. App. 2000).

Where the state has not been provided the opportunity to address a prisoner's claim due to procedural failure by the petitioner, the federal procedural default doctrine precludes federal habeas corpus review. *Id*.; *see Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding an unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred); *Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1998) (same). To overcome the procedural bar on non-exhaustion, a prisoner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Woodfox v. State*, 2010 U.S. App. LEXIS 13557 (5th Cir. 2010) (citing *Coleman, supra* and *Ries v. Quarterman*, 522 F.3d 517, 523-24 (5th Cir. 2008)). Since the 1995 amendment of the Texas habeas corpus statute, the Texas Court of Criminal Appeals has applied the "abuse of the writ" doctrine even more regularly and strictly than before. That statute prohibits a Texas court from considering the merits of, or granting relief based on, a subsequent writ application filed after the final disposition of an inmate's first application unless he demonstrates the statutory equivalent of cause or actual innocence. Tex. Code Crim. Proc. Ann. art. 11.07 § 4 (West Supp. 1996).

8

<u>Petitioner's Claim No. 1</u>

As his Claim No. 1 in his Federal habeas corpus petition, Williams raises an issue as to the authority of a city policeman to effect a traffic stop for a traffic offense outside of the territorial limits of the policeman's city.[14]   Williams asserts that the traffic stop by a Sulphur Springs policeman outside of the territorial limits of the town of Sulphur Springs for two alleged traffic offenses (driving across the center stripe and speeding) was an illegal stop because under the Texas statutes the policeman was not one of the officers listed in the Texas Code of Criminal Procedure §2.12 given authority to make traffic violation stops outside of the territorial limits of their city. Therefore, Williams claims that the drugs found in his car after that illegal stop should have been, and would have been, suppressed and excluded from the evidence introduced at his trial but for the incompetence of his trial counsel who failed to argue this issue at the time of the suppression hearing before the trial court.  It should be noted that Williams was convicted May 26, 2010,[15] but the traffic stop occurred on January 10, 2007. Petitioner further alleges that Sulphur Springs and Brashear are both in Hopkins County.[16]

The State responds that this claim is unexhausted and cannot be considered by this Court under the proscriptions of *Stone v Powell* and its progeny.

<u>Exhaustion Analysis-Claim No. 1</u>

At the trial court level Williams' counsel filed and presented a motion to suppress the drug evidence seized as a result of the search of the vehicle following the traffic stop. Counsel argued that

---

[14]     For sake of brevity this claim will frequently be referred herein to as "territorial jurisdictional claim" or "jurisdictional issue."

[15]     Petitioner's Federal Petition, Docket No. 3, p.2.

[16]     Docket No. 23, p.14 (Page 5 of Petitioner's State Habeas Application)

the officer did not have reasonable suspicion or probable cause to stop Williams' vehicle since it was not speeding nor crossed the center stripe, but counsel did not raise or hint at any challenge of the territorial jurisdiction of the location of the first observation of the claimed traffic violations or the location of the stop. At the trial court level Williams' counsel also requested a jury instruction on a required exclusion of illegally obtained evidence,[17] but the trial court denied that request.

On direct appeal which he handled *pro se*, Williams presented the argument that the trial court erred in denying the motion to suppress as it was a "pretext" stop and that the duration of the detention following the stop was excessive and unjustified by any reason for detention. But Williams did not make any reference to the territorial jurisdictional issue. Rejecting the "pretextual stop" argument the appeals court determined that the officer had "ample reasonable suspicion for the initial detention" and "to continue the detention past the initial stop" until the drug dog could be brought in for sniff of the car to confirm the officer's smell of the odor of Marihuana emanating from the vehicle and ruled that the trial court did not err in denying the motion to suppress.

On the direct appeal Williams also challenged the trial court's refusal to submit the requested jury instruction but the Court of Appeals held that the court did not err in refusing to give the requested evidence exclusion jury instruction since "This case does not present *any fact issue* concerning the legality of the search."

Furthermore, on his direct appeal, Williams did raised certain ineffectiveness of counsel

---

[17]     A jury instruction permitted by Article 38.23 of the Texas Code of Criminal Procedure, stating: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

claims,[18] to-wit:

1.   That his trial counsel was not prepared for trial.
2.   That his counsel failed to object to "the biased judge and jury."
3.   That the prosecutor committed misconduct; and,
4.   That his counsel failed to complain as to the answer to a jury note.

But <u>nowhere</u> in his direct appeal did Williams complain that his trial counsel failed to raise

the traffic stop jurisdictional issue.

However, in his state habeas petition,[19] Williams did raise the territorial jurisdiction issue.

Williams alleged as follows:

"Officer Williams, testified that he first notice the 2007 Red Pontiac Grand Prix, that displayed Georgia license plates at mile marker 115, Brashear, Tx. ...He engaged his overhead emergency light's at mile marker 118 ½, Brashear, Tx for petitioner to pull over I stopped at mile marker 119, west-side of Brashear, Tx." p. 14.

"As the records reflects these sequence of events never occurred in Sulphur Springs, Tx City Limits.  Brashear, Tx is the adjacent City to Sulphur Springs, Tx which are both in Hopkins, County, Tx officer initial a stop outside the territorial boundary as peace officer he lacked statutory authority to stop petitioner." p.14.
...
"The State's or the trial courts did not bring forth the facts that the officers was outside his jurisdictional area and reasonable suspicion is not enough to stop or detain a person for committing a traffic offense." p. 22.
...
"Petitioner's shows just cause to assemble there historical facts further in the memorandum, that the officers conducted a warrantless search or a warrantless arrest.  However, there was no evidence showing that the city police officers had authority or jurisdiction to stop petitioner's outside his city limits, Brashear, Texas is the adjacent city to Sulphur Springs.  Nevertheless, the officers did not observe possession of control substance until after her stopped Petitioner's and search the vehicle."  p.22.

---

[18]      For the sake of brevity, these claims of "ineffective assistance of counsel" will frequently be referred herein to as "IAC claims."

[19]      Petitioner's State Habeas Application, Docket No. 23-1, pp. 14 and 22.

The Texas Court of Criminal Appeals denied the claim without written order.[20] Therefore, this Fourth Amendment claim was fairly presented to the Texas courts and Texas courts afforded Williams the fair opportunity to litigate this claim, but it was denied.  Under *Stone v. Powell*, the front door to this Court's consideration of this claim in this Court is barred.

However, there is a *Kimmelmann* [21] back door through which this claim might have come before this Court.  In *Kimmelmann*, the Supreme Court held, "In summary, we reject petitioners' argument that *Stone's* restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." Does Williams have the key to the *Kimmelmann* back door to present this claim in this Court?

In his state habeas petition Williams did allege ineffective assistance of counsel (IAC) claims.[22]  He alleged a litany of twenty-five separate failures he claimed his trial counsel committed. But <u>nowhere</u> in Williams' state court filings, in the trial court, on direct appeal, or in the state habeas proceeding did Williams assert that his trial counsel rendered ineffective assistance due to any failure of counsel to raise or discuss the territorial jurisdictional issue upon which Williams now so adamantly depends.  Williams' key does not fit the *Kimmelmann* backdoor lock. This is a new claim on a new factual theory that has not been fairly presented to the state courts.  Due to the failure on Williams' own part to fairly present this claim to the state courts, Williams' territorial jurisdictional

---

[20]    Docket No. 23-1, p. 2.

[21]    *Kimmelmann v. Morrison*, 477 U.S. 365 (1986); See also *Gary v. Epps*, 248 Fed. Appx.497 (5th Cir. 2007)("Although Stone v. Powell, 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), precludes Gary from obtaining federal habeas relief on an independent Fourth Amendment claim, Stone does not bar Gary's ineffective assistance of counsel claim premised on counsel's failure to litigate a Fourth Amendment claim.)"

[22]    Docket No. 23-1, p. 23.

claim is unexhausted.  Being unexhausted, this claim is barred from consideration by this Court. But that is not the whole story.  Even apart from this preclusive deficiency, Williams claim lacks merit.

<u>Lack of Merit-Claim No. 1</u>

Petitioner Williams' jurisdictional claim appears to arise out of a Texas Court of Criminal Appeals 2004 holding in *Kurtz v. State*, 152 S.W. 3d 72, 80 (October 20, 2004). In that case the court held that under the Texas statutes then pertaining to a city police officer's jurisdictional authority, a city police officer did not have the authority to make a warrantless traffic stop of a driver of a vehicle for a traffic violation *outside of* the officer's city's territorial border.  The traffic stop in *Kurtz* occurred on August 12, 2001. The trial occurred in 2002; the direct appeal to the court of Appeals occurred in 2003; and the discretionary review by the Court of Criminal Appeals occurred in 2004.  During those years, Article 14.03(g) of the Texas Code of Criminal Procedure provided in pertinent part as follows:

> "(g) A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12, who is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, *except* that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, *only if* the officer is listed in Subdivision (4), Article 2.12. .." [emphasis supplied]

The *Kurtz* case holding, relying as it does upon the express restricting language of Article 14.03(g) of Texas Code of Criminal Procedure applicable at that time, was **superceded** by a subsequent legislative amendment.  Authority to arrest **within the city police officer's county** was added by amendment in 2005, Acts 2005, 79th Legislature, Chapter 1015, §1, effective September 1, 2005 which added a new subdivision to section (g) to article 14.03.  The new statutory language reads as follows:

> "A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may

arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed *in the county or counties in which the municipality employing the peace officer is located.*"

That referenced Subdivision (3) of Tex. Code Crim. Proc. art. 2.12 provides as follows:

"Art. 2.12.  Who Are Peace Officers
   The following are peace officers:
   (1)***
   (2)***
   (3) marshals or *police officers of an incorporated city, town, or village*, and those reserve municipal police officers who hold a permanent peace officer license issued under Chapter 1701, Occupations Code."  [Emphasis supplied].

This very statutory change made in 2005 was highlighted by the Court of Criminal Appeals in *York v. State*, 342 S.W. 3d 528; 2011 Tex. Crim. App. LEXIS 913 (June 29, 2011), cert. denied. 2012 *U.S. LEXIS* 759 (2012) and more recently in *Thomas v. State*, 336 S.W.3d 703, 709 (Tex. Ct. App. 2010)( "Subsection 14.03(g)(2) of the Texas Code of Criminal Procedure did not exist at the time that Kurtz was decided"); accord, *Halili v. State*, 430 S.W. 3d 549, 552 (2014) citing the language of 14.03 (g)(2).

Therefore, two years after that amendment to Article 14.03(g) of Texas Code of Criminal Procedure, Williams' trial counsel cannot be faulted for not having raised this losing territorial jurisdictional issue argument as a portion of his argument in support of Williams' motion to suppress.[23]  He did challenge, albeit unsuccessfully, the only remaining issue as to the lawfulness of the initial traffic stop, to-wit: The lack of evidentiary support for the officer's observation that Williams had committed one or more traffic violations (speeding 68 in a 65 mph zone, and crossing the center line.

---

[23]     *Shields v. Dretke*, 122 Fed. Appx. 133, 151 (5th Cir. 2005)("The failure to raise meritless, futile objections does not constitute ineffective assistance of counsel." Citing *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) and *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam).

Petitioner Williams' Claim No. 1 is barred and is without merit.  Accordingly, I recommend that the District Court deny Petitioner's Claim No. 1.

Petitioner's Claim No. 2

As his Claim No. 2 in his Federal habeas corpus petition, Williams raises an issue that the complaint in his case was never properly filed or ruled on by the trial court since it lacked date and proper signatures.  As his Traverse Claim No. 2 Williams asserts that the complaint was not supported by probable cause, lacking a proper date, lacked a proper signature.   The state urges that these claims are unexhausted, not having previously been presented to the state courts to afford an opportunity for those courts to address it, but nonetheless, both are without merit since Williams was tried on the charges in the indictment,[24] not on the complaint. The administrative record before this court so reflects.[25] The state is correct. Since these claims were not previously presented to the state court's for determination, they are unexhausted.  Furthermore, since the complaint was superceded by the indictments, and Williams was tried on the charges in the indictments, any defects in the complaint are irrelevant.  The claim is unexhausted and also totally lacks merit.  For both reasons, I recommend to the District Court that both Petitioner's Claim No. 2 and Traverse Claim No. 2 should be denied.

Petitioner's Claims Nos. 3, 4 and 5 and Traverse Claims 3, 4 and 5

As his Claim Nos. 3, 4 and 5 in his Federal habeas corpus petition and his Traverse Claims 3, 4, 5, Williams challenges the decisions of the trial court, the Court of Appeals and the Court of Criminal Appeals with respect to their collective failure to apply the exclusionary rule to the drugs found in his vehicle by the search that was conducted after the allegedly illegal initial stop of

---

[24]     Docket No. 20-1, p. 13 (the indictment).

[25]     Docket No. 20-2, p.223.(the arraignment).

his vehicle.  These are all part of a Fourth Amendment challenge to the search that was initiated by Williams' motion to suppress in the trial court.

Williams' court appointed counsel filed a Motion to Suppress in the trial court asserting, *inter alia* that Williams was arrested without a warrant, without probable cause or lawful authority in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments and seeking to exclude all evidence seized in connection with his detention and arrest.[26] After selection of the jury and the taking of some testimony from the arresting officer,[27] the trial court took a brief break outside of the presence of the jury to consider the Defendant's motion to suppress. After the presentation of testimony from the arresting officer[28] and cross-examination of the officer by Defendant's counsel, the court entertained arguments of counsel.  During the course of his argument, Williams' counsel implied that the in-car video camera recording of the incident conflicted with the officer's testimony.[29]  After counsel had completed their arguments, the trial court decided to view the video tape off the record.  Immediately upon going back on the record following the viewing of the video tape, the trial court overruled the motion to suppress without discussion and without reciting any fact findings or conclusions.[30]

The trial proceeded that day and the next without Williams' voluntary attendance.[31]  During the trial evidence derived from the search of his vehicle and supporting Williams' possession of both cocaine and Marihuana was introduced.  Portions of the in-car video recording of the incident were

---

[26]      Docket No. 20-1, pp. 43-45.

[27]      The officer's name was Cleve Williams (no relation to Petitioner).

[28]      Docket No. 20-2, pp. 244-289.

[29]      *Id*. p. 289, lines 3-7.

[30]      *Id.*, p. 293, lines 14-18.

[31]      He apparently absconded and was tried *in absentia*.

played before the jury. Williams was convicted of both charges and was sentenced.

Williams appealed both convictions by companion direct appeals to the 6th Court of Appeals.[32] After much wrangling among Williams, the Court of Appeals and the trial court,[33] Williams was permitted to represent himself in his direct appeals. In representing himself, Williams filed handwritten requests designating items to be included in the record to be prepared by the clerk of the trial court and forwarded as the trial court record to the Court of Appeals.[34]

On his direct appeals, Williams asserted that the trial court erred in not granting the motion to suppress evidence from the illegal search and in failing to submit a special instruction to the jury to permit the jury to disregard any evidence produced as a result of the illegal search.[35] Williams asserted that the officer did not have a reasonable suspicion that Williams had or would commit a criminal offense, a necessary condition to justify the traffic stop. Williams asserted that the in-car video recording would impeach the testimony of the arresting officer and, as a result, the evidence would not support a finding of probable cause for the stop of his vehicle or the subsequent search. The in-car video recording tape was not in the appellate record before the Court of Appeals. The Court of Appeals ruled against Williams on these issues in both appeals and affirmed the trial court.[36] In its written opinion at footnote number 5, the Court of Appeals addressed the issue of the absence

---

[32]     Separate appeals, one of the conviction for possession of Marihuana and one for possession of cocaine, were docketed at the Court of Appeals under different Cause Nos. 0819904 and 0819905 respectively.

[33]     *See* Docket No. 22-2, pp. 160-164 (Order dated 10-20-12 for history of the wrangling over Williams' self-representation on appeal).

[34]     Docket No. 22-2, pp. 222-23 and 225-26.

[35]     Williams' Brief to Court of Appeals, Docket No. 21-1, pp. 73, 105-117.

[36]     Docket No. 21-2, pp. 20-25.

of the in-car video recording, laying the blame for its absence upon Williams' alleged procedural failure to cause the tape recording to be brought forward as part of the appellate record.[37]

Williams next filed a request for discretionary review by the Court of Criminal Appeals.[38] It was denied without written opinion.[39]  Thereupon, Williams filed a petitions for habeas corpus with the Court of Criminal Appeals[40] again raising the issue of the trial court's denial of his motion to suppress but also complaining that on his direct appeal the Court of Appeals had erred in failing to bring forward for its review the in-car video recording of the incident.[41]

I find that Williams has exhausted his Fourth Amendment Claims at the state court level.  I further find that Williams was afforded an opportunity for a full and fair consideration of his Fourth Amendment claims at the state trial court, Court of Appeals and state habeas court levels. I conclude that further consideration of Williams' Fourth Amendment Claims by this court is barred under *Stone v. Powell*.  But even apart from the *Stone v. Powell* bar, I find that part of Williams' claims predicated upon the absence of the in-car video recording lacks merit.

Williams claims that he properly requested in writing that the appellate record include *all of the exhibits* introduced in the trial which should have included the tape recording from the in-car camera.[42] Williams claims that he was unaware that the in-car video recording had not been transmitted to the Court of Appeals as part of the appellate record until Williams received his copy

---

[37]      *Id*. p. 20.

[38]      Docket No. 21-2, pp. 34-53

[39]      See footnote 5, supra.

[40]      Docket No. 23-1, pp. 10-34 and Docket No. 26-1.

[41]      *Id*. at pp. 18-20.

[42]      Docket No. 22-2, Record on Discretionary Review, pp. 222-23 and 225-26.

of the Court of Appeal's opinion denying his appeals.[43]  Thus he claims that absence of the tape for

Court of Appeals' review was not due to his procedural default. He asserts that a Court of Appeals

review of the recording would have created a factual conflict with Officer Cleve Williams' testimony

upon which the trial judge must necessarily have based his decision to overrule Williams' motion to

suppress.

      The absence of the video recording for review at the Court of Appeals level was adequately

explained by the Court of Appeals in its footnote in its opinion.  Whether the responsibility for the

absence of the tape recording is to be ascribed to Williams or to the clerk of the trial court or to the

Court of Appeals itself is irrelevant.  Absent any allegations by Williams as to what facts the video

tape would have shown regarding the Officer Cleve Williams' observations of Williams' vehicle

crossing the center line or speeding, Williams has failed to raise a fact issue to challenge the trial

judge's implied finding that Officer Cleve Williams had a reasonable suspicion that Williams had

committed a traffic violation (either by crossing the center line or by speeding) thereby justifying the

*Terry* [44]stop.  Indeed, at one point in his brief Williams before the Court of Appeals Williams

eschewed any argument that the officer's observation of his vehicle traveling 68 miles per hour in

a 65 mile per hour zone was not probable cause for the initial traffic stop.[45] Indeed, Williams' trial

counsel seemed to have conceded the same point in his argument to the trial judge.[46]

      A review of Williams' counsel's argument before the trial court reflects that counsel

concentrated on the issue of *probable cause* justifying the delay after the *Terry* stop for the

---

[43]    *Id.*, p. 209 (Williams' Brief in Support of his Petition for Discretionary Review).

[44]    Terry v. Ohio, 392 U.S. 1 (1968).

[45]    Docket No. 21-1, p. 106, lines 4-6.

[46]    Docket No. 20-2, p. 288, lines 17-19 and  p.291, lines 3-4.

investigation to continue, rather than challenging "reasonable suspicion" to justify the *Terry* stop itself.  In considering counsel's argument and viewing the tape, the trial court made an implied finding that the officer had *probable cause* to extend the time of detention to permit a further investigation.  The Court of Appeals adequately addressed the extension of the investigation following the *Terry* stop in its opinion both as to the facts and as to the then existing law.

Williams does not allege any facts that conflict with the testimony of Officer Williams as to the events following the *Terry* stop.  Accordingly, I find that Williams has failed to raise a claim cognizable by this court with respect to the legality of the search of his vehicle. I conclude that further consideration of Williams' Fourth Amendment Claims by this court is barred under *Stone v. Powell*.  Accordingly, I recommend to the District Court that Williams' Claims 3, 4 & 5 be DENIED.

Petitioner's Claim No. 6

Williams' Claim No. 6 consists of allegations of ineffective assistance of his trial counsel in nineteen separate particulars.  These nineteen claims will be addressed in later sections of this order as IAC Claims 6(1)-6(19).

Petitioner's Claim No. 7

By his Claim No. 7, Williams asserts that the indictment was defective because the State did not give proper notice of its intent to enhance the punishment.  Williams also presented a derivative claim[47] in his Traverse (Docket No. 35) that his sentence exceeds the maximum allowed by law because his indictment was defective for not properly giving due notice of the States's intention to seek enhancement.  Since Williams raised this claim in his state habeas application[48] the claim is

---

[47]    Claim No. 7 in the Traverse.

[48]    Docket No. 23-1, p. 16

20

exhausted and is not barred under *Picard v. Connor*[49] from consideration here.

Before the state habeas court Williams argued, and he argues here, that the indictment was invalid or defective because it did not give adequate or any statutorily required notice of the State's intention to enhance his punishment by proving his prior felony convictions.

The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *Evans v. Cain*, 577 F.3d 620 (5th Cir. 2009) citing *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) and *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir.1980).  In *Evans*, the Court stated:

" In other words, "'[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case,'" *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (alterations in original) (quoting *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)), then the question "as to whether a state trial court was deprived of jurisdiction . . . is a question foreclosed to a federal habeas court," *Liner*, 731 F.2d at 1203. An issue may be squarely presented  to and decided by the state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order. *See Alexander*, 775 F.2d at 599 ("By refusing to grant the appellant relief . . .  the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction . . . ."); *See*, e.g., *McKay*, 12 F.3d at 68 (holding that an issue was squarely presented to the state's highest court when the petitioner presented the argument in a state application for postconviction relief and the Texas Court of Criminal Appeals denied the application without written order)."

Here, Williams presented this very issue to the Texas Court of Criminal Appeals through his habeas corpus petition and it was denied without written opinion, just like in *McKay*.  The Texas Constitution provides that the "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Texas Constitution, Art. 5, § 12(b). Based on this provision, Texas courts have held that "failure to include an essential element of the crime charged, which constitutes a defect of substance, does not deprive the trial court of jurisdiction." *McKay*, 12 F.3d at 69 (citing *Studer v. Texas*, 799 S.W.2d 263 (Tex. Crim. App. 1990)).  An indictment should be found

---

[49]     404 U.S. 270 (1971).

sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.") (citing *United States v. Salinas*, 956 F.2d 80, 82 (5th Cir. 1992)). Accordingly, I conclude that it is beyond debate that Williams has not made a substantial showing of the denial of a constitutional right with respect to his sufficiency of the indictment claims.

Furthermore, since the 1985 Amendments of the Texas constitution[50] and statutes[51] regarding indictments, a defendant waives and forfeits the right to object to the defect, error, or irregularity of an indictment unless he raises the substance of the indictment before the date on which the trial on the merits commences.  Thus, Texas law requires a defendant to object to any error in the indictment before the day of trial. *Teal v. State*, 230 S.W. 3d 172 (Tex. Crim. App. 2007).  No such objection was raised before Williams' trial commenced.  This waiver alone constitutes an adequate state ground for the Court of Criminal Appeals' denial of Williams Claim No. 7 and Traverse Claim No. 7.  I find that Williams' Claim No. 7 and Traverse Claim No. 7 in this Court are therefore lacking merit and I recommend to the District Court that they be DENIED.

### Petitioner's Claims No. 8 and Traverse Claim No. 8(a)

Williams' Claim No. 8 and Traverse Claim No. 8(a) that the trial court erred in denying his retained  and appointed counsels' respective motions to withdraw and for continuance and that he was denied his right to represent himself was directly addressed on Williams' direct appeal.[52] The Court of Appeals reviewed the procedural context in which the trial court addressed retained counsel's motion to withdraw and appointed counsel's motion for continuance and determined that

---

[50]      TEX. CONST. ART. V § 12(b)

[51]      TEX. CODE CRIM. PROC. art. 1.14(b) and TEX. CODE CRIM. PROC. art. 28.10.

[52]      Court of Appeals Opinion, Docket No. 21-2, pp. 1-30 at pp. 17-19.

the trial court did not err in its denials of both motions.[53] These same issues were presented by Williams to the Court of Criminal Appeals in his petition for discretionary review [54] which was denied without written order. These issues were exhausted before the state courts and not barred from consideration in this court.

Title 28 U.S.C. § 2254(d) dictates a highly deferential standard for evaluating state-court rulings. *Bell v. Cone*, 535 U.S. 685 (2005). State courts are presumed to know and follow the law. *Id*. State court factual findings are presumed to be correct, and the petitioner bears the burden of rebutting this presumption "by clear, convincing evidence to the contrary." *Hogues v. Quarterman*, 312 Fed. Appx. 684, 686 (5th Cir.) (quoting *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir.2005); 28 U.S.C. § 2254(e)(1).

This claim of Williams was raised to and adjudicated by the 6th Court of Appeals and by the Texas Court of Criminal Appeals, which have each already denied Petitioner's claims. Consequently, he cannot obtain federal habeas corpus relief unless he can show that the adjudication of his claims by the Texas Court of Criminal Appeals either resulted in a decision that was contrary to established federal law (see *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002); 28 U.S.C. § 2254(d)(1)) or resulted in a decision based on an unreasonable determination of the facts (*See Riddle*, 288 F.3d at 716; 28 U.S.C. § 2254(d)(2)). "A state court's decision is deemed 'contrary to' clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (quoting *Murphy*, 416 F.3d at 431-32). "A state

---

[53]     *Id*. p. 17 (ruling on motion for continuance) and p. 19 (ruling on motion to withdraw.

[54]     Docket No. 21-2, pp. 51-52.

court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable." *Id.* (same). Thus, the unreasonable application clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Brown v. Payton*, 544 U.S. 133, 147 (2005). The habeas petitioner has the burden of showing that the state court applied the law to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 25, 27 (2002); see also, *Price v. Vincent*, 538 U.S. 634, 641(2003).

Factual determinations underlying the state court's adjudication are entitled to a presumption of correctness which must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e). A petitioner seeking habeas relief pursuant to 28 U.S.C. § 2254 must plead facts in support of his claims. Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, in state and federal court, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir.1988); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983) (cited in *Murphy*, 416 F.3d at 437).

The issues raised by these claims were adversely determined against Williams by those state courts.

I find that those decisions were based upon state law reasonably applied by those state courts. The state courts' determinations are presumptively correct. Williams' many written filings before this Court do not allege facts to support any finding that his trial resulted in "manifest injustice" or that he was factually innocent of either of the two offenses. Accordingly, I recommend to the District Court that this Claim No. 8 and Traverse Claim No. 8(a), be DENIED.

Petitioner's Claim No. 9.

Williams' Claim No. 9 is a derivative of his Claims 1, 3, 4 and 5 wherein he challenges the state courts' determinations of the legality of the search under the Fourth Amendment. Here he challenges the sufficiency of the evidence of probable cause for the officer making the stop and continuing the investigation, the very issue presented to the Court of Appeals on Williams' direct appeal.[55]   In its analysis of the issue of the trial court's denial of Williams' motion to suppress, the Court of Appeals summarized the evidence in the record supporting the trial court's implied finding that the officer had reasonable suspicion for the initial detention[56] and the trial court's implied finding that the officer had sufficient reasonable suspicion to continue the detention.[57]   The Court of Appeals' determinations concerning the sufficiency of the evidence are reasonably supported by the trial court record.   I find that the Court of Appeals' decisions were based upon state law reasonably applied by the state courts. The state court determinations are presumptively correct. Williams' many written filings before this Court do not allege facts to support any finding that his trial resulted in "manifest injustice" or that he was factually innocent of either of the two offenses. Accordingly,  I recommend to the District Court that this Claim No. 9, be DENIED.

Petitioner's Claim No. 10.

Willaims claims that his sentences totalling 63 years constitute cruel and unusual punishment for two simple drug possession cases under the Eight Amendment.  As forcefully argued by the State, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, United States Supreme Court case law establishes no clear or consistent path for courts

---

[55]      Docket No. 21-2, pp. 1-30.

[56]      *Id.* P. 23

[57]      Id, p. 24.

to follow. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). For purposes of federal habeas corpus review of state court decisions, the only clearly established federal law, see § 2254(d)(1), is that a sentence of a term of years <u>*can*</u> violate the Eighth Amendment where the term is grossly disproportionate to the offense. *Lockyer, 538 U.S.* at 72, citing *Harmelin v. Michigan*, 501 U.S. 857 (1991); *Solem v. Helm*, 463 U.S. 277 (1983); and *Runnel v. Estelle*, 445 U.S. 263 (1980). Between the offense and the term of years, the Eighth Amendment does not require strict proportionality. *Ewing v. California*, 538 U.S. 11, 23 (2003). *See, e.g., Lockyer* at 73-74 (holding that two consecutive twenty-five to life terms for two counts of petty theft under California recidivist statute did not involve unreasonable application of gross-disproportionality principle clearly established in federal law).

The statutory maximum sentence for Williams' cocaine possession charge was from 5 to 99 years or for life.[58] By reason of the enhancement provisions of the Texas Penal Code, the statutory minimum sentence for the cocaine possession charge was increased from 5 to 25 years.[59]  With or without the enhancement, Williams' sentence was within the statutory maximum proscribed for his offense. Therefore, in the absolute sense, that sentence was within the middle range of years of incarceration determined by the Texas legislature to be appropriate for the nature of the offense. It was not clearly cruel or unusual.

Furthermore, Williams' claim is conclusory. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of

---

[58]    Section 481.112(d) Texas Health & Safety Code defining a first degree felony and Section 12.32 Texas Penal Code proscribing a confinement range life or from 5years to 99 years.

[59]    Section 12.42(d)

probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971). Mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir.1982) (collecting cases).

I find that the state court's denial of relief on this claim asserted in Williams' state habeas corpus petition was reasonable. Accordingly, I recommend to the District Court that this Claim No. 10 be DENIED.

<u>Petitioner's IAC Claims 6(1)-(19)-Exhaustion</u>

As noted above, by its Response and its Supplement, the State asserts that Williams' IAC claims Nos. 6(1), 6(3), 6(5), 6(7), 6(9), 6(12), 6(16), 6(17), and 6(18) are each and every unexhausted and therefore barred from review by this court. In this circuit, *pro se* habeas petitions such as Williams' are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Howard v. Thaler*, 2013 U.S. Dist. LEXIS 51760 (SD Tex. 2013) (citing *Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981).) This court must broadly interpret Williams' state and federal habeas petitions. *Id. (*citing *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).)

Having fully reviewed the administrative record containing the trial court records, the record on direct appeal, the petition for discretionary review, and the record of habeas corpus proceedings in the companion cases, I find that each and every one of Willaims' IAC Clams Nos. 6(2), 6(4), 6(6), 6(8), 6(10), 6(11), 6(13), 6(14), 6(15), and 6(19) were raised, litigated and determined at the state court level. These claims have been exhausted. The standards by which ineffective assistance of counsel claims are measured were established by the United States Supreme Court in *Strickland v.*

*Washington,*[60] and its progeny.

Countless times the Fifth Circuit has indicated that competency and adequacy are all that the Constitution commands of trial counsel. Counsel is not required to be errorless in his work, though surely that is a worthy goal. Effective assistance of counsel means "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Boyd v. Estelle*, 661 F.2d 388 (5th Cir. 1981) (quoting *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1969), adopted in pertinent part on rehearing en banc, 289 F.2d 928 (5th Cir. 1961)); *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir.1982); *United States v. Burroughs*, 650 F.2d 595, 598 (5th Cir.1981); *Ogle v. Estelle*, 641 F.2d 1122, 1128 (5th Cir.1981); *Hill v. Wainwright*, 617 F.2d 375, 380 (5th Cir.1980); *Wilkerson v. United States*, 591 F.2d 1046, 1047 (5th Cir.1979); *Franklin v. United States*, 589 F.2d 192, 194 (5th Cir. 1979); *Jones v. Estelle*, 584 F.2d 687, 690 (5th Cir. 1979); *Carbo v. United States*, 581 F.2d 91, 92 (5th Cir. 1978); *United States v. Alvarez*, 580 F.2d 1251, 1254 (5th Cir. 1978).

A federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (federal habeas review of a state court's adjudication involves review only of a state court's decision, not the written opinion explaining the decision; *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006) (holding section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision. "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination

---

[60]     466 U.S. 668,687 (1984).

was unreasonable." W*iggins v. Smith*, 539 U.S. 510, 520 (2003); see also, *Price v. Vincent*, 538 U.S. 634, 641 (2003); and *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (" ...a substantially higher threshold.").

Even where, as here, the denial of a petition for discretionary review or a petition for writ of habeas corpus is made without express findings of fact or written opinion, this Court is charged to presume that the state court denied the petitioner's claims on the merits of each raised claim and on the basis of the proper application of state and federal law to each such claims.

Upon review of the administrative record on the direct appeal, the petition for discretionary review and petition for habeas corpus, I find that the state court's denial of these presented IAC Claims Nos. 6(2), 6(4), 6(6), 6(8), 6(10), 6(11), 6(13), 6(14), 6(15) claims was reasonable. Accordingly, I recommend to the District Court that these claims be DENIED.

Turning now to the unexhausted IAC Claims:

IAC Claim 6(1)

By his Claim No. 6(1), Williams asserts that his counsel failed to investigate the police officer's jurisdiction or the "interlocal" agreement/boundary adjustment between the two adjacent cities. This clearly is a companion to his jurisdictional claim as discussed above that was unexhausted but also had no merit. Since the jurisdictional claim lacked merit, counsel cannot be faulted for not investigating or raising the jurisdictional claim as a losing proposition.[61]

_____

[61]     *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995)("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett*, 907 F.2d 524 (5th Cir. 1990). (" This Court has made clear that counsel is not required to make futile motions or objections. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam).");*Lopez v. United States,* 2002 US. Dist. LEXIS 8280 (N.D. Tex. 2002, J. Solis)("This argument is frivolous and fails to meet the requirements of *Strickland*. Counsel is not required to make meritless motions"); *Esquivel v. United States*, 2012 U.S. Dist. LEXIS 169303 (ND. Tex. 2012, MJ.Stickney)("Petitioner's counsel was not required to make a frivolous argument.")

This claim is unexhausted and this claim also lacks merit. I recommend to the District Court that this Claim No. 6(1) be DENIED.

IAC Claim 6(3)

By his Claim No. 6(3), Williams asserts that his counsel failed to object to the defects in the complaint and in the indictments wherein neither recites the statutory language of the offenses in their entirety. Notwithstanding Williams' many allegations of defects in the complaint and indictment contained in his state court filings, this claim was never made at the state court level.[62] So, this claim was unexhausted at the state court level is barred from consideration by this Court.

Furthermore the claim wholly lacks merit. As to the complaint, Williams claimed it was defective for several reasons of form and content. But as noted in the foregoing analysis of his Claim No. 7, he was tried on the charges in the indictments, not on the complaint. Therefore, Williams' counsel cannot be faulted for not having raised a frivolous, meritless objection to the form or content of the complaint.

As to the form and content of the indictments, Federal courts should not consider the sufficiency of a state indictment in a federal writ of habeas corpus unless the "indictment is so defective that the convicting court had no jurisdiction." *Bomar v. Dretke*, 2005 U.S. Dist. LEXIS 18380 (N.D. Tex. 2005, J. Ferguson)(citing *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988).

Williams does not specify what element or elements of the statutory defined offenses the indictments lack. Under Texas state law, a written instrument is an indictment or information under the Texas Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is

---

[62]    *Id.*

otherwise defective. *Duron v. State*, 956 S.W. 2d 547, 550-51 (Tex. Crim. App. 1997) citing *Studer*

*v. State*, 799 S.W. 2d. 263, 272 (Tex. Crim App. 1990).

At the time of the return of the indictments, the offense of possession of cocaine was

contained in §481.115, §481.002(5) and §481.102(3)(D ) of the Texas Health & Safety Code, which

in the year 2007 provided in pertinent parts, as follows:

> § 481.115 "...a person commits an offense if the person knowingly possesses a controlled
> substance listed in Penalty Group 1....(d) ... if the amount of the controlled substance
> possessed is, by aggregate weight, including adulterants or dilutant, more than four grams
> but less than 200 grams."

> § 481.002(5)"Controlled substance" means a substance ...listed in ... Penalty Groups 1.."

> § 481.102(3)(D) "Penalty Group 1 consists of...
>           (3)(D) Cocaine..."

The offense of possession of marihuana was contained in § 481.121 the Texas Health & Safety Code

which in the year 2007 provided in pertinent parts, as follows:

> § 481.121 "(a)...a person commits and offense if the person knowingly or intentionally
> possesses a usable quantity of marihuana. (b) An offense under Subsection (a) is: (1)...(3) a state jail
> felony in the amount of the Marihuana possessed is five pounds or less but more than four ounces."

The controlled substance indictment adequately referenced the appropriate penal statute

(H.S.C. 481.115); adequately names the "person" (to-wit, Curtis Leo Williams), adequately

establishes the date of the offense (10th day of January, 2007), adequately alleges the possession of

a controlled substance (Cocaine) by the person, adequately alleges the requisite level of *mens rea*

(intentionally and knowingly), and the alleged amount of the controlled substance (more than four

but less than 200 grams.)

The marihuana indictment adequately referenced the appropriate penal statute (H.S.C.

481.121); adequately names the "person" (to-wit, Curtis Leo Williams), adequately establishes the

date of the offense (10th day of January, 2007), adequately alleges the possession of a usable quantity

of Marihuana by the person, adequately alleges the requisite level of *mens rea* (intentionally and

knowingly), and the alleged amount of the marihuana possessed (five pound or less but more than four ounces.)

Even assuming that there is some significant variance between the statutory language defining the offense and that used in the indictment, the variance does not render the indictment fatally defective.  "A defective indictment does not deprive a court of jurisdiction, and a defect in the indictment does not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630-31 (2002). The sufficiency of a state indictment is appropriate for federal habeas corpus relief only when it can be shown that the indictment is so defective that it deprives the convicting court of jurisdiction. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *Id.* The Fifth Circuit has held that the district court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994).

Any variance between the exact language of the statutes and that used in the indictments is inconsequential. The indictments against Williams fairly and adequately allege the necessary elements of the offenses for which he was convicted. I conclude that these indictments are sufficient in Texas under *Duron* and in this court under *Morlett*.  Therefore, Williams' counsel cannot be faulted for not having raised  frivolous, meritless objection to the indictments or to the complaint.[63]  For the foregoing reasons, I recommend to the District Court that this Claim No. 6(3) be DENIED.

<u>IAC Claims 6(5) and 6(12)</u>

In his Claim Nos. 6(5) and 6(12) Williams complains that his counsel failed to investigate

---

[63]        *Id*.

the indictments' tolling provisions and to object thereto.  This is Williams' way of challenging the validity of the indictments by raising the issue of the effect of the over two year delay between his arrest on January 10, 2007 and the commencement of his trial March 2, 2009.  Williams further complains that his trial counsel failed to raise the issue of the delay between the date of the his arrest to the date of the indictments.

Delay In Indictments

Williams claims that the indictments show on their face that they were barred by lapse of time since they were not presented during the "next term" of court or  within 30 days of his from his  arrest on January 10, 2007 as provided in Tex. Code Crim. Proc. art. 32.01.[64]  The Complaint was filed March 2, 2007; the Indictments were returned and filed March 6, 2008 (reciting presentment during January Term, 2008). In Hopkins County, the Court terms were January and July.[65]  "Next term" of court after his commitment or admission to bail within the meaning of the statute would have been July 2007 thru December 31, 2007.  Factually, I find that Williams was not indicted on either of the two charges within the "next term" of the 8th District Court for Hopkins County, or within 180 days of his arrest and admission to bail. However, Texas courts have held that once an indictment has been returned, a defendant no longer has standing to have the charges against him dismissed for failure of the prosecution to timely present the case to the grand jury. A defendant

---

[64]     Tex. Code Crim. Proc. Art. 32.01.  Defendant in Custody and No Indictment Presented   When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.

[65]     Tex. Gov't Code §24.108 (Enacted by Acts 1985, 69th Leg., ch. 480 (S.B. 1228), § 1, effective September 1, 1985).

33

must seek to dismiss an untimely indictment under article 32.01 before the indictment is returned or error as to the timeliness of the return of the indictment is waived. *Brooks v. State*, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999) (holding defendant waived right to challenge indictment for untimeliness since indictment was already returned); see also *Hixson v. State*, 1 S.W.3d 160, 163 (Tex. App.--Corpus Christi 1999, no pet.) (holding complaint of untimely indictment must be preserved by pre-indictment objection); *Fisk v. State*, 958 S.W.2d 506, 508-09 (Tex. App.--Texarkana 1997, pet. ref'd) (holding defendant's failure to move to set aside indictment as untimely before indictment was returned waives right to complain as to indictment's untimeliness). *Herrera v. State*, 2009 Tex. App. LEXIS 9690 (Tex. Ct. App. 2009), summarizing the foregoing holdings.[66]

This part of Claims No. 6(5) and 6(12) lacks merit. Williams' trial counsel cannot be faulted for not having made a meritless objection or motion to dismiss on this ground.

### Delay in Trial Commencement

Williams claims that his trial attorney failed to assert the statute of limitations to the prosecution of the case. Both of the indicted charges were felony offenses. The Texas statute of limitations for prosecutions for possession of a controlled substance (cocaine) and for felony possession of marihuana is contained in Article 12.01(7) of the Texas Code of Criminal Procedure which proscribes the residual period of three years during which a felony indictment may be

---

[66]    See also, Reynolds v. Dir, 2009 U.S, Dist. LEXIS 73218 (E.D. Tex 2009, MJ. Mazzant): "According to Petitioner, he should have been released because the indictment was not presented within 180 days. Under Texas law, however, if a prosecution of a defendant is dismissed under Tex. Code Crim. Proc. Art. 32.01, the defendant may be re-arrested for the same criminal conduct alleged in the dismissed prosecution upon presentment of the indictment or information for the offense. Tex. Code Crim. Proc. Art. 15.14. Thus, although Petitioner was indicted more than 180 days following his arrest, this is not a jurisdictional defect because even if it had been dismissed, it would not have been a bar to future prosecution. *Id.*"

presented for these felony offenses. For these purposes, an indictment is considered to be presented when it has been duly acted on by the grand jury and received by the court.[67]  Both of Williams' indictments were returned by the grand jury[68] and filed with the court on March 6, 2008,[69] within three years of his arrest and release on bail. Accordingly, I find that Williams was indicted on both charges within the three year limitations window of Article 12.01(7). To the extent his limitations defense is predicated on the delay between his arrest and the presentation of the indictment, his claim clearly lacks merit.

As to the delay between the date of the indictment and the commencement of his trial, Williams asserts that the state failed to plead, much less prove, any tolling of the limitations period. This argument is belied by the express language of Article 12.05(b) of the Texas Code of Criminal Procedure that provides that "The time during the pendency of an indictment...shall not be computed in the period of limitations."[70] To the extent Williams' limitations defense is predicated on any delay between the presentment of the indictments and the commencement of his trial, Williams' claim wholly lacks merit. Accordingly, I recommend to the District Court that these Claims No. 6(5) and 6(12) be DENIED.

---

[67]     Tex. Code Crim. Proc. Art. 12.06 (Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), effective January 1, 1966; am. Acts 1973, 63rd Leg., ch. 399 (S.B. 34), §2(B), effective January 1, 1974.

[68]     See Order Setting Bond, Docket No. 20-1, p.14; Docket No. 22-1, p.14.

[69]     Docket No. 20-1, p.13 (cocaine indictment); Docket No. 22-1, p. 13(marihuana indictment).

[70]     Tex. Code Crim. Proc. Art. 12.05 (Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966; amend. Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 2(B), effective January 1, 1974. See also, *Proctor v. Cockrell*, 283 F.3d 726, 728 (footnote 1) (5th Cir. 2002) ("Because no motion to dismiss that count of the original indictment was ever made, it remained pending after the original trial, thereby tolling the statute of limitations as to that offense. See Tex. Code Crim. P. Ann. art. 12.05(b) (West 2000)."

## IAC Claim No. 6(7)

Williams' Claim No. 6(7) is a derivative of his Claim No. 7, that the state failed to give proper notice of its intent to seek enhanced punishment based on two prior felon convictions and for his attorney's failure so object on this ground.  Apart from the conclusory allegation that the indictment failed to properly allege the enhancements, Williams' petition and other filings do not specify the claimed defect in the form or substance of the indictment.  This argument seems to have been precipitated by certain comments made by the prosecutor during a pre-trial hearing to the effect that the enhancement allegations contained in the cocaine possession indictment was not separated into two separate paragraphs in the indictment.  During a hearing Williams' counsels' motions to withdraw and for continuance the following colloque among the court, defense counsel and the prosecutor arose:

> THE COURT:          But I see you've alleged an enhancement.
>
> MS. CROUCH:         We have alleged an enhancement, yes your Honor.
>
> THE COURT:          And so that would make it a first-degree felony if you're able to prove that?
>
> MS. CROUCH:         Well, I believe that there are–while there is not an adequate delineation of the paragraphs here, that should actually be two separate paragraphs reflecting two separate pen trips.  And it's also referenced that way in the State's file, which has been provided to Mr. Loyd..
>
> THE COURT:          Okay. Now, let's make that clear.  What are you saying there?
>
> MS. CROUCH:         That there are - -there should be two paragraphs there.  As written, it appears that it is one paragraph.  My point, Judge, was that, although

it's not presented properly in the indictment, in fact, two pen trips,

which would make this fall into the habitual status.

THE COURT:      What you're saying is, you believe this indictment alleges 25 to life?

MS. CROUCH:     Subsequent to the notice being given to Mr. Loyd, yes, that would be

the punishment range.

THE COURT:      Okay, And it is in the indictment.  However, I see the indictment

alleges a 2002 conviction in Davidson County, Tennessee and then

a 1995 conviction in Davidson, County, Tennessee. And those I

assume, were felonies: is that right?

MS. CROUCH:     Yes, your Honor.

THE COURT:      Okay, I see what you're saying.  Okay.

MS. CROUCH:     But that notice will be provided to Mr. Lloyd as soon as possible.[71]

The Texas Court of Criminal Appeals has previously held that prior convictions used as

enhancements must be pleaded in some form, but not necessarily in the indictment. *Brooks v. State*,

957 S.W.2d 30, 33 (Tex. Crim. App. 1997),  followed in *Villescas v. State*, 189 S.W.3d 290, 293

(Tex. Crim. App. 2006) and *Martinez v. State*, 2013 Tex. App. LEXIS 658 (Tex. Ct. App. 2013).

In *Villescas*, the Texas Court of Criminal Appeals articulated the constitutional origin for the notice

requirement regarding enhancement allegations gleaned from the United States Supreme Court case

of *Oyler v. Boles*, 368 U.S. 448 (1962).  Though requiring that notice of the state's intention to

enhance be given "due process does not require that the notice be given prior to the trial on the

substantive offense." *Id.* p. 504.,

In *Throneberry v. State*, 72 S.W.3d 389, 395 (Tex.App.-Fort Worth 2002, pet. dism'd,

---

[71]      Docket No. 20-2, pp. 37-38.

untimely filed), the Fort Worth Court of Appeals held that *a letter mailed* to defense counsel and later introduced in evidence at the trial did not constitute a "pleading" of the enhancement.  In *Cochran v. State*, 107 S.W. 3d 96 (2003),  the Texas Court of Criminal Appeals held that where the indictment did not give notice that the state intended to rely on a prior felony conviction for enhancement, *a letter alone* sent to defendant's counsel so advising was insufficient, but harmless error.  But in this case, the indictment itself does contain a paragraph that sets out a description of two prior-in-time felony convictions against Williams. And, on the day of the commencement of the trial, the state filed a written Notice of Intent to Introduce Evidence of Extraneous Matters[72] which listed eight prior felony convictions of Williams, including as items 6 and 7 the same offenses identified in the indictment.

The issue then becomes whether the language and form of the indictment supplemented by the Notice constituted Constitutionally sufficient notice for Williams and his counsel to have prepared a defense.[73]  If so, then Williams' counsel cannot be faulted for failing to challenge the indictment for want of adequate notice. I conclude that Williams received such Constitutionally sufficient notice.  Further, had Williams' trial counsel raised the issue of the adequacy of the notice prior to trial and prevailed, the State could have cured the adequacy by filing an appropriate notice without having to reindict Williams.

Here, the indictment, the charging document, did set forth descriptions of two prior convictions by Williams. In his state habeas corpus petition and in his petition and other filings in this Court, Williams failed to plead any facts supporting his claim that his or his counsel's preparation of defense was prejudiced in any way by any failure of notice regarding the prior

---

[72]        Docket No. 20-1, p. 36-37.

[73]        See, *Pelache v. State*, 324 S.W. 3d 568, 577 (Tex. Crim. App. 2010).

convictions. Accordingly, there was ample evidence in the record for the Texas Court of Criminal Appeals to have concluded that Williams' defense was not prejudiced by the form in which Williams' prior felony convictions were described in the indictment in a single paragraph rather than in two in the light of the descriptions of those offenses in the Notice.

Since the Court of Criminal Appeals denied Williams' habeas corpus petition in which he attempted to raise this issue, that decision is presumptively correct. And, as explicated in the analysis of Claim No. 7 above,[74] any defect in the form of the indictment did not deprive the state court of jurisdiction. Whether exhausted at the state level or not, this Claim No. 6(7) lacks merit.  I recommend to the District Court that this Claim No.6(7) be DENIED.

## IAC Claim No. 6(9)

Williams' IAC Claim No. 6(9) directed toward alleged deficiencies[75] in the form of the Complaint  is a derivative of his Claims Nos. 6(2), 6(3) and 6(4) discussed above.  Since Williams raised this issue in his state habeas corpus petition,[76] it is an exhausted claim and may be considered by this Court.  Since Williams was tried on the indictments, objections to the format, content, and manner of a presentation of the complaint are legally irrelevant.  For the reasons set forth in regard to Claims Nos. 6(2), 6(3) and 6(4), this claim wholly lacks merit. I recommend to the District Court that this Claim No.6(9) be DENIED.

## IAC Claim No. 6(16)

Williams' IAC Claim No. 6(16) alleging the failure of his counsel to object to prosecutorial

---

[74]     The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. Evans v. Cain, 577 F.3d 620 (5th Cir. 2009).

[75]     Lack of stamp file mark and seal of court.

[76]     Docket No. 23-1, p.17.

misconduct was raised in Williams state habeas corpus petition[77] but conclusory and unsupported by sufficient factual allegations.  In Texas allegations concerning the propriety of jury arguments are cognizable at the direct appeal level.  Failure to raise these arguments on direct appeal, waives consideration of them by the state courts on request for discretionary review or habeas corpus. The Court of Criminal Appeals' denial of Williams' habeas corpus petition is presumptively correct.  In the absence of any factual allegations to support this claim in this court, the claim lacks merit and should be denied.  I recommend to the District Court that Claim No. 6(16) be DENIED.

## IAC Claim No. 6(17)

Williams' IAC Claim No. 6(17) regarding trial counsel's failure to investigate the "cruel and unusual punishment clause," though raised in his state habeas corpus petition was conclusory only both in the state habeas corpus petition and in his petition in this court. Being conclusory only, Williams' failed to give the state opportunity to fully and fairly address this claim.  It is unexhausted and cannot be considered on its merits in this court.  I recommend to the District Court that this Claim No. 6(17) be DENIED.

## IAC Claim No. 6(18)

Williams' IAC Claim No. 6(18) regarding trial counsel's failure to challenge "the impropriety for lack of qualification and authorization to participate in any aspect of this case from warrant/affidavit" is as incomprenhensible and unexplained by Williams in his filings in this court as it was in his state court filing.[78]  Being conclusory only, Williams failed to give the state opportunity to fully and fairly address this claim.  It is unexhausted and connot be considered on its merits in this court.  I recommend to the District Court that this Claim No. 6(18) be DENIED.

---

[77]     Docket No. 23-1, p.24.

[78]     Docket No. 23-1, p.36.

IAC Claim No. 6(19)

By this claim Williams asserts that his counsel rendered ineffective assistance since he "failed to object to the prosecutor using her strikes during voir dire to exclude all black member of jury."[79]  Williams made this same *Batson* challenge in his state petition for habeas corpus.[80] Although he identified various jury veniremen whose responses he found unfavorable to him, he failed to identify any strike exercised by the prosecutor to disqualify any person on racial grounds. Williams Batson challenge is wholly conclusory. Being conclusory only, Williams failed to give the state opportunity to fully and fairly address this claim.  It is unexhausted and connot be considered on its merits in this court.  I recommend to the District Court that this Claim No. 6(19) be DENIED.

Recommendation

Each and every of Williams' Claims in this court have been addressed above.  For the reasons given above, I recommend to the District Court that each and every, all and singular, the Claims of Curtis Leo Williams be DENIED.

It is so ORDERED, this 2nd day of December, 2014.


Robert K. Roach
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

A copy of this report containing findings, conclusion and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings, conclusions and recommendations must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding, conclusion or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and

---

[79]     Docket No. 3, p. 19.

[80]     Docket No. 23-1, p. 24.

recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 2nd day of December, 2014.

Robert K. Roach
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE